IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BEST PALLETS INC. and BEST INDUSTRIAL
PALLETS, L.L.C., by and through their President
and Owner JAMES L. TAYLOR; ITNOLAP
PALLET & CRATING, INC., by and through its
President and Owner WILLIAM M. CLARK;
ITNOLAP PALLET & CRATING, L.L.C., by and
through its President and Half-Owner WILLIAM M.
CLARK; PALLET EXPRESS, INC., by and through
its Vice-President and Owner LYNN RIDGE BELL;
and GOEMAN'S WOOD PRODUCTS, INC., by and
through its President and Owner DANNY J.
GOEMAN, for themselves and all others similarly
situated                                              PLAINTIFFS

        v.                    Case No: 08-2012

BRAMBLES INDUSTRIES, INC., and BRAMBLES
NORTH AMERICA, INC., d/b/a, CHEP USA
                                                      DEFENDANTS

## O R D E R

Before the Court is the Motion to Dismiss (Doc. 11) on behalf of Defendants Brambles Industries, Inc. and Brambles North America, Inc., d/b/a CHEP USA and documents relating thereto. For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

**A. Background**

Plaintiffs, as wood pallet recyclers on behalf of themselves and all others similarly situated, filed a Complaint on February 6, 2008 (Doc 1). Plaintiffs allege Defendants' violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (2004), based on Defendants' alleged attempt to monopolize the national wood pallet market. The

factual allegations set out within the complaint are summarized and construed in the light most favorable to the Plaintiffs, which we are required to do. Plaintiffs allege as follows:

- CHEP is the largest supplier of wood pallets in the United States.
- In 1997, CHEP—a lessor of wood pallets—initiated the Accelerated Volume Program ("AVP") in order to increase its share of the pallet market in the United States.
- Under the AVP, CHEP leased pallets to its customers with no requirement that the customers return the pallets to the CHEP pool.
- CHEP knew—based on its own analysis and the analysis of Credit Suisse - First Boston—that significant numbers of pallets would be lost under the AVP, yet CHEP proceeded.
- In accordance with the normal functioning of the pallet industry, end users of pallets arranged for the collection of unneeded pallets by pallet recyclers.
- Approximately 4,000 pallet recyclers exist in the United States.
- The recyclers—based on their contractual obligations—collected all pallets held by end users, including those leased by CHEP.
- CHEP initiated no efforts to collect its own pallets from said end users because it knew that the recyclers were obligated to

- collect the pallets.
- CHEP lost millions of pallets as a result of the AVP.
- CHEP demanded return of its leased pallets from the recyclers but either did not compensate or under compensated the recyclers for the return.
- To compel return, CHEP widely threatened and took legal action against several recyclers, asserting its perpetual ownership of the leased pallets. CHEP made no similar recovery efforts with respect to its own customers.
- CHEP's actions—by design—shifted the company's collection costs to the recyclers, thereby increasing the recyclers cost of business and simultaneously decreasing CHEP's costs.
- Because pallets are a completely fungible product, a slight cost differential leading to a price differential can have a large impact on product demand.
- The AVP system has led to the addition of thousands of CHEP customers, and CHEP has 90-100 million pallets currently in circulation in the United States.

**B. Standard of Review**

In determining whether a motion to dismiss should be granted, the court must test the legal sufficiency of a complaint. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974 (2007). In considering a motion to

dismiss, the Court takes all allegations in the complaint as true and views the facts most favorably to the non-moving party. *Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 405 (8th Cir. 1999).

**C. Discussion**

Section 2 of the Sherman Act, 15 U.S.C. § 2, makes it unlawful to attempt to monopolize any part of interstate commerce. In an attempted monopolization claim, a plaintiff must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). *See also*, *Conoco Inc. v. Inman Oil Co., Inc.*, 774 F.2d 895, 904 (8th Cir. 1985). For the reasons set forth, the Plaintiffs' complaint provides a plausible basis for relief. *Twombly*, 127 S.Ct. at 1974.

"Conduct that will support a claim of attempted monopolization must be such that its anticipated benefits were dependent upon its tendency to discipline or eliminate competition and thereby enhance the firm's long term ability to reap the benefits of monopoly power." *Inman Oil Co.*, 774 F.2d at 905 (internal quotation omitted). Plaintiffs allege that CHEP embarked on pallet leasing program knowing that the consequence would be the widespread loss of its pallets. By design, CHEP allegedly permitted its pallets to come into the possession of pallet recyclers, thereby utilizing

their established pallet-collection network for its own benefit without providing adequate compensation. By not bearing the collection costs associated with its leasing program, CHEP allegedly gained long term pricing advantage at the expense of recyclers.

"The specific intent necessary to support an attempted monopolization under § 2 must be shown by conduct or acts from which a wrongful intent can be inferred." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 975 (8th Cir. 1968). The Plaintiffs allege that CHEP has consistently failed to provide proper compensation for the return of its pallets. They further allege that CHEP has persistently threatened—and in some cases pursued—legal action against them while not pursuing similar action against its customers who are similarly situated. Thus, CHEP's alleged course of conduct supports an inference of intent.

Finally, the plaintiff must allege a realistic probability—in light of the product market and its geographic scope—that monopoly power can be achieved. *Spectrum Sports*, 506 U.S. at 459, 113. The relevant market is determined based on the willingness and ability of consumers to turn to reasonable product alternatives. *U.S. v. Empire Gas Corp.*, 537 F.2d 296, 303 (8th Cir. 1976). The plaintiffs allege a national market for pallets, a product which they describe as completely fungible. They further allege that CHEP is the largest pallet producer in this market and that the AVP has rapidly increased CHEP's customer base. These facts—considered in light

of CHEP's alleged ability to shift its own costs to the pallet recyclers and thereby create a pricing differential—are sufficient to allege a realistic probability of monopoly power.

**D.  Conclusion**

For the above stated reasons, Defendant's Motion to Dismiss (Doc. 11) is DENIED.  The Defendants have ten days from the date of this order to file an Answer to the Plaintiffs' Complaint.

IT IS SO ORDERED this 11th day of August, 2008.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge